UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>LUIS CABRERA )<br>a/k/a Luis Alcantara )<br>a/k/a Luis Cabreia )<br>a/k/a Hector Rivera )<br>a/k/a Hector Rivers )<br>) | CRIMINAL NO.: 04-10159-NG |

GOVERNMENT'S SENTENCING MEMORANDUM

On November 6, 2006, Luis Cabrera entered a plea of guilty to counts 1 through 25 of the superseding information, including thirteen counts of wire fraud (counts 1 through 13), eight counts of bank fraud (counts 14 through 21), and four counts of mail fraud (counts 21 through 25). Sentencing is scheduled for March 5, 2007.

FACTS

Luis Cabrera perpetrated numerous frauds using a variety of stolen identities. On January 29, 2004, Cabrera was detained on related state charges and while in custody confessed to many of these activities (See attached Memorandum of Interview by John Murphy on January 29, 2004 (January Interview) and Memorandum of Interview by John Murphy on February 9, 2004 (February Interview)).

In 2002, while working as a car salesman at Quirk Imports, Cabrera used stolen identity information to co-sign loans for friends and acquaintances. PSR ¶¶11-12, January Interview. Cabrera knew that some of these people were themselves using false identities to purchase the vehicles. January Interview. After being fired from Quirk Imports, Cabrera began purchasing cars

using identity information stolen from several victims from New York. PSR ¶13. Cabrera used the names and social security numbers of these victims and obtained counterfeit driver's licenses that contained the stolen information, but Cabrera's photo. PSR ¶13. Armed with the stolen information and drivers licenses Cabrera would purchase and finance cars under the names and credit of these victims. PSR ¶13.

According to Cabrera, he often transferred the cars to others, usually in return for cash. January Interview, February Interview. Some of the cars that Cabrera bought under assumed identities were shipped to the Dominican Republic. PSR ¶13. In total, Cabrera was involved in the fraudulent purchase of 29 vehicles, worth more than one million dollars. See PSR, chart following ¶33. In addition to posing as other people to purchase cars, Cabrera obtained several credit cards and mobile phone accounts using stolen identity information. PSR ¶14.

## SENTENCING GUIDELINES

A. Calculation of Loss

The loss to be used for sentencing purposes here is "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 comment (n.3) (2006). Intended loss is "the pecuniary harm that was intended to result from the offense . . . [including] harm that would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1 comment (n.3(A)(ii)) (2006). Application note 3(E)(ii), which reduces the loss by the amount of collateral pledged by a defendant and recovered at the time of sentencing, does not apply to many of the frauds here. Cabrera's purpose was to gain possession of the cars without paying for them. He merely pretended to pledge the cars as collateral and intended that his victims never recover the cars.

A number of courts have held that collateral will not reduce loss when the defendant intends

to deprive the victim of the collateral. The Ninth Circuit, for instance, has held that a defendant who fraudulently purchased a car by using a false identity was not entitled to a reduction of loss, even though the car had been repossessed and sold, because the defendant had intended that the collateral not be recovered by the victim. See U.S. v. McCormac, 309 F.3d 623, 624-628 (9th Cir. 2002). Other courts of appeal that have confronted the issue have reached similar conclusions. See, e.g. U.S. v. Staples, 410 F.3d 484, 490 (8th Cir. 2005) (holding that whether collateral was to be used to reduce loss depended on whether defendant intended the collateral to revert to the victim); U.S. v. Banta, 127 F.3d 982, 983-84 (10th Cir. 1996) (holding that cars used as collateral and repossessed did not reduce loss caused by fraud because defendant intended that lender be deprived of the collateral); U.S. v. Johnson, 16 F.3d 166, 173 (7th Cir. 1994) (holding that collateral need not be reduced from loss because defendant's activity made it uncertain whether bank would have collected on collateral if fraud had not been uncovered).

Most of the frauds Cabrera committed in 2003 were with the intent that defrauded lenders never receive the collateral. Cabrera used false identity information, gave false addresses, and transferred cars to other people and out of the country. Cabrera's purpose was to take the cars and never pay for them. As such, the recovered collateral in these schemes should not be used to reduce the loss Cabrera intended to cause, which reflects his actual culpability. Instead the full value of the loans obtained should be used. Because of the uncertainties surrounding the intent of Cabrera's fraud in a few of the cases, the ultimate intended loss from Cabrera's conduct is not clearly above one million dollars and thus the offense level calculation in the PSR is correct. However, the underlying calculation of loss significantly understates the seriousness of Cabrera's frauds. While not clearly over one million dollars, the harm Cabrera intended to cause was significantly more than

the $636,272.54 stated in ¶34 of the PSR.

B. Sentencing Range

With the exception of the calculation of loss discussed above, the PSR accurately applies the sentencing guidelines and ultimately the offense level of 22 and sentencing range of 77 to 96 months is correct. PSR ¶¶52, 124. The government will be requesting a sentence within this range.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Adam Bookbinder
ADAM J. BOOKBINDER
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

/s/ Adam J. Bookbinder
Adam J. Bookbinder

Dated: February 27, 2007